IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                          PLAINTIFF/RESPONDENT

V.                        Criminal No. 6:15-CR-60026-SOH-MEF-1
                          Civil No. 6:17-cv-06116-SOH-MEF

NICHOLAS SMITH                                    DEFENDANT/PETITIONER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Petitioner's Motion Seeking a Vacatur, Setting-Aside, Correction of

His Sentence (Pursuant to Title 28 U.S.C. § 2255) filed on November 16, 2017. (ECF No. 49). The

United States filed its response on December 15, 2017. (ECF No. 54). Petitioner did not file a reply.

The matter is ready for report and recommendation.

**I. Background**

On September 16, 2015, the Defendant/Petitioner, Nicholas Smith ("Smith"), was named in

an Indictment charging him with two counts of distributing methamphetamine. (ECF No. 1). Smith

was arrested on September 21, 2015, and he appeared with retained counsel, Justin Hurst ("Hurst"),

for arraignment on September 22, 2015, at which time he entered a not guilty plea to the Indictment.

(ECF No. 7).

A Superseding Indictment was returned on December 9, 2015, charging Smith with two

counts of distributing methamphetamine (Counts One and Two), one count of possession of

methamphetamine with intent to distribute (Count Three), one count of possession of a firearm in

furtherance of a drug trafficking offense (Count Four), and one count of knowing possession of an

unregistered firearm (Count Five). (ECF No. 17). Smith was arraigned on the Superseding

-1-

Indictment on January 5, 2016, and he entered a not guilty plea to the Superseding Indictment. (ECF No. 22). On May 5, 2016, attorney Travis J. Morrissey ("Morrissey") entered his appearance as co-counsel for Smith. (ECF No. 27).

On May 13, 2016, Smith appeared with counsel before the Hon. Susan O. Hickey, United States District Judge, for a change of plea hearing. (ECF No. 29). A written plea agreement (ECF No. 28) was presented to the Court, and Smith pleaded guilty to Count Three (possession of methamphetamine with the intent to distribute) and Count Four (possession of a firearm in furtherance of a drug trafficking offense) of the Superseding Indictment. (ECF No. 29). The Court deferred sentencing pending preparation of a Presentence Investigation Report ("PSR").

An initial PSR was prepared by the United States Probation Office on July 26, 2016. (ECF No. 30). On August 12, 2016, the United States advised that it had no objections to the PSR. (ECF No. 32). On August 26, 2016, Smith advised that he had six objections to the PSR. (ECF No. 33). Specifically, Smith objected to paragraphs 25 and 26 (relating to particular facts in the reported offense conduct) as untrue; to paragraphs 28 and 33 (relating to the drug quantity attributed to Smith) as untrue; to paragraph 69 regarding "Physical Condition" as untrue; and, to paragraph 91 regarding the applicable Guidelines range as untrue, stating "the Offense Base Level is considerably lower than the Pre-Sentence Investigation Report contains." (ECF No. 33). No substantive changes to the PSR were made in response to Smith's objections, although paragraphs 26 and 69 were amended to clarify certain facts. (ECF No. 34-1, p. 2).

On September 12, 2016, a final PSR, together with an Addendum, was submitted to the Court. (ECF No. 34). The final PSR determined that Smith was accountable for 21.77 kilograms

of methamphetamine mixture[1] and 10 firearms.  (ECF No. 34, ¶¶ 25, 28).  Based on that drug quantity, Smith's base offense level was determined to be 36.  (ECF No. 34, ¶ 33).  A two-level specific offense characteristics enhancement was assessed for maintaining premises for the purpose of storing or distributing controlled substances.  (ECF No. 34, ¶ 34).  After a three-level reduction for acceptance of responsibility, Smith's total offense level was determined to be 35.  (ECF No. 34, ¶¶ 40-42).  Smith had a criminal history score of zero, placing him in criminal history category I. (ECF No. 34, ¶ 57).  The statutory maximum term of imprisonment is 20 years for Count Three; the statutory minimum term of imprisonment is five years and the maximum is life for Count Four, and any term of imprisonment on Count Four must be imposed consecutively to any other counts.  (ECF No. 34, ¶ 90).  Based upon a total offense level of 35 and a criminal history category of I, Smith's advisory Guidelines range was determined to be 168 to 210 months imprisonment on Count Three, and the Guidelines sentence on Count Four was five years.  (Doc. 34, ¶ 91).

On September 23, 2016, Smith's counsel filed a Sentencing Memorandum and Motion for Non-Guideline Sentence.  (ECF No. 36).  Mitigating factors were argued, and counsel suggested that a sentence of 37 months would be sufficient, but not greater than necessary, to achieve the goals of sentencing.  (ECF No. 36, p. 13).

Smith appeared for sentencing on October 27, 2016.  (ECF No. 37).  The Court made inquiry that Smith was satisfied with his counsel; the PSR was reviewed; and, the Court found that Smith should be accountable for a total of only two pounds of a methamphetamine mixture, resulting in a base offense level of 30, rather than 36.  (ECF No. 39, ¶ I(B)(1)).  The PSR change reduced the

---

[1] Numerous other controlled substances were seized at the time of Smith's arrest, but they were not included in the calculation because they had no impact on the base offense level.  (ECF No. 34, ¶ 28, fn. 4).

Guidelines range to 87 to 108 months imprisonment for Count Three, with the Guidelines range for Count Four remaining at not less than 60 months imprisonment.  (ECF No. 39, ¶ III).  Smith's motion for a downward variance, which was not opposed by the Government, was granted.  (ECF No. 39, ¶ VI(B)(2)).   The Court then imposed a below-Guidelines sentence of 60 months imprisonment on Count Three, 60 months imprisonment on Count Four, to run consecutively for a total of 120 months imprisonment; three years supervised release on each count, to run concurrently; no fine; and, a total of $200.00 in special assessments.  (ECF No. 37).  Judgment was entered by the Court on November 1, 2016.  (ECF No. 38).  Smith did not pursue a direct appeal from the Judgment.

Smith filed a Motion to Modify, Correct, or Reduce Sentence on January 27, 2017.  (ECF No. 41).  In it, Smith alleged: "Since the Defendant's incarceration, more has been learned about his overall health and the severity of his seizure disorder. At the time of sentencing, the Defendant's medical condition was not fully known and therefore, was not fully imparted to the Court."  (ECF No. 41, ¶ 5).  Smith further alleged that "it has been reported that he had just awoken from a seizure at the time police raided his home making him in an extremely confused state of mind ...", and that "[t]he full extent of the Defendant's epilepsy and what that may have meant in regard to his conduct at the time of his arrest and prior to his arrest could not be fully developed because the Defendant, himself, attempted to keep his full condition from his family and friends."  (ECF No. 41, ¶ 9).  He asked the Court to reduce his sentence either by allowing his sentences to run concurrently or by reducing the number of months to serve.  (ECF No. 41, ¶ 10).  The Government responded, noting that the Court had been well advised of these issues at sentencing, and stating there was no authority under Rule 35 to reduce the sentence since the Government had not moved to do so.  (ECF No. 44).

-4-

The motion was denied by the Court on July 11, 2017.  (ECF No. 45).

On November 16, 2017, Smith filed his *pro se* Motion Seeking a Vacatur, Setting-Aside, Correction of His Sentence (Pursuant to Title 28 U.S.C. § 2255) (the "motion").  (ECF No. 49).  The motion raises two grounds for relief: (1) ineffective assistance of counsel for failing to move for suppression of Smith's statements to law enforcement "while in a postictal[2] state" following a seizure (ECF No. 49, pp. 2-6); and, (2) ineffective assistance of counsel for failing to object to the Court's finding that it must consider the sentence for each count of conviction separately (ECF No. 49, pp. 6-9).  Due to a deficiency in Smith's declaration in the motion, Smith was ordered on November 17, 2017 to file an amended declaration within 15 days.  (ECF No. 53).  Smith has not filed an amended declaration as ordered by the Court.

The United States filed a response to the motion on December 15, 2017.  (ECF No. 54).  Smith has not filed a reply.

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If the court

---

[2] The postictal stage occurs after the active stage of a seizure.  During the postictal stage, the body begins to relax, and aftereffects may set in.  The type and length of aftereffects will vary from person to person and may include: numbness; headache; fatigue and drowsiness; partial paralysis; confusion and agitation; loss of consciousness or unresponsiveness; and, loss of bowel or bladder control.  www.uchospitals.edu/specialties/neurosciences/epilepsy/seizure/stages.html, last viewed on December 21, 2017.

finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Smith's § 2255 motion and the files and records of this case conclusively shows that Smith is not entitled to relief, and the undersigned recommends the denial and dismissal of his § 2255 motion with prejudice without an evidentiary hearing.

### A. Timeliness; Lack of Verification

A one year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires. *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008). The Judgment in this case was entered on November 1, 2016. (ECF No. 38). Had Smith wished to file an appeal, he was required to do so within 14 days. *See* Fed. R. App. P. 4(b)(1)(A)(i). Smith did not file an

appeal, and his conviction thus became final on November 15, 2016. *See Murray v. United States*, 313 F. App'x 924 (8th Cir. 2009). From that date, Smith had one year, or until November 15, 2017, to timely file his § 2255 habeas petition. Smith filed his § 2255 motion on November 16, 2017, one day after the limitations period expired.

Smith's § 2255 motion is dated October 9, 2017 (ECF No. 49, p. 10), but it was not received and filed by the Court Clerk until November 16, 2017. Smith may be relying on the so-called "prison mailbox rule" to establish that his § 2255 motion was timely filed. Rule 3(d) of the Rules Governing Section 2255 Proceedings provides the following:

> "A paper filed by an inmate confined to an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid."

It is Smith's burden to show his entitlement to the benefit of the prison mailbox rule. *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001). In *Porchia*, the petitioner did not attach an affidavit or notarized statement setting forth the date of deposit into the prison mail system and attesting that first-class postage has been prepaid. The Court ruled that in the absence of such declaration "the record is bereft of information that supports Porchia's entitlement to the benefit of the prisoner mailbox rule." *Id*. A similar ruling was made in *United States v. Frook*, No. 4:05-CR-677 CAS, 2008 WL 5110596, at p. 2 (E.D. MO. Dec. 3, 2008).

Further, 28 U.S.C. § 2242 provides that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting

in his behalf." Rule 2(b)(5), Rules Governing § 2255 Proceedings, similarly requires that the motion "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." A court may dismiss a petition that has not been signed and verified in compliance with the statutory requirements. *See Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

Smith did not sign and verify his § 2255 motion under penalty of perjury, nor did he attach an affidavit or notarized statement setting forth the date of deposit into the prison mail system and attesting that first-class postage has been prepaid. (ECF No. 49, p. 10). Due to these deficiencies, the Court entered an Order on November 17, 2017 directing Smith to file an amended declaration, in compliance with 28 U.S.C. § 1746 or by a notarized statement, and stating the date he deposited his § 2255 motion into the correctional institution's internal mailing system and whether first-class postage had been prepaid. (ECF No. 53). Smith has not filed an amended declaration as ordered by the Court.

The certificate of service signed by Smith does not state that the § 2255 motion was deposited in the prison mail system, nor does it state, as Rule 3(d) plainly requires, that first class postage had been prepaid. The failure to put sufficient first-class postage on the mailing could certainly explain why the motion, which was purportedly signed on October 9, 2017, was not received and filed in the Clerk's office until over a month later on November 16, 2017. Due to the deficiency in Smith's declaration, and his failure to file an amended declaration curing the deficiency, Smith has failed to show that he is entitled to the benefit of the prison mailbox rule.

"Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests (internal citation omitted), and limitation periods work both ways - you can

be sure [Smith] would not be pooh-poohing the prosecution's tardiness if [he] had been indicted one day after the statute of limitations expired for [his] crimes." *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

Smith's § 2255 motion has not been properly verified as required by statute and court rule, nor has it been timely filed, and it is subject to summary dismissal.

Even if the Court were to consider Smith's ineffective assistance of counsel claims, they have either been waived by his guilty pleas, lack support in the record, or are otherwise without merit.

### B. Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

### C.  Failure to Move to Suppress Statements (Ground One)

#### 1.  Effect of Smith's Guilty Pleas

Smith pleaded guilty to the two offenses of conviction.  As a result, the Government contends Smith's first ground for relief – ineffective assistance of counsel for failing to file a motion to suppress his post-*Miranda* statements – has been waived.  (ECF No. 54, pp. 7-10).  The undersigned agrees.

When a guilty plea is entered, the focus of a subsequent collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea.  *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)).  As the Court in *Tollett* eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, *he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advise he received from counsel was not within the standards set

forth in *McMann*[3].

> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id*. at 267 (emphasis added).

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.3d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962); and, *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

---

[3] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

### 2. Smith's Guilty Pleas Were Voluntary and Intelligent

Smith alleges he was in a postictal state following a seizure he experienced just moments before his arrest, that the arresting officers were informed of this, and that certain protocols should have been taken to ensure the protection of his Fifth Amendment rights. (ECF No. 49, pp. 4-5). Smith essentially contends he was not competent to waive his *Miranda* rights at the time of his interrogation by law enforcement. He further alleges "[t]he prejudice suffered by the Petitioner from the incoherent statements which were made in relation to the drug quantities which were handled in his case had a prejudicial affect (sic) on the outcome of his proceedings and resulted in a higher sentence than necessary," and "[c]ounsel's ineffectiveness resulted in the Petitioner being prejudiced by those statements ..." (ECF No. 49, pp. 5-6). Smith does not, however, allege that ineffective assistance of counsel rendered his subsequent guilty pleas involuntary, unintelligent, and invalid. By entering voluntary and intelligent guilty pleas Smith waived all non-jurisdictional defects in the proceedings that occurred prior to his guilty pleas, and he is barred from raising the claim he now asserts.

Smith was represented by retained counsel throughout the course of the prosecution, including arraignment, detention proceedings, discovery, plea negotiations, the change of plea hearing, and at sentencing. Defense counsel negotiated a plea agreement with the Assistant United States Attorney prosecuting the case, and counsel carefully reviewed the plea agreement with Smith before obtaining Smith's signature on it. (ECF No. 28, ¶ 27). The written plea agreement informed Smith of the counts of conviction (Counts Three and Four of the Superseding Indictment charging Smith with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §

-12-

924(c)(1)(A)); the maximum penalties, including a mandatory minimum term of 5 years imprisonment and a maximum term of life imprisonment on Count Four; and, Smith was specifically informed that any term of imprisonment imposed as to Count Four "shall not run concurrently with any other term of imprisonment imposed." (ECF No. 28, ¶¶ 1, 11).

Smith acknowledged he had fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which he was pleading guilty; and, he admitted there was a factual basis for his guilty pleas. (ECF No. 28, ¶ 3).

The plea agreement advised Smith of his constitutional and statutory rights, including the right to persist in his plea of not guilty. (ECF No. 28, ¶ 4). By signing the plea agreement, Smith acknowledged that: he had read the plea agreement and carefully reviewed every part of it with his counsel; he fully understood the plea agreement; no promises, agreements, understandings, or conditions were made or entered into in connection with the decision to plead guilty except those set forth in the plea agreement; he was satisfied with the legal services provided by defense counsel in connection with the plea agreement and matters related to it; and, he entered into the plea agreement freely, voluntarily, without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion. (ECF No. 28, ¶ 26).

During the change of plea hearing on May 13, 2016, Smith was sworn on oath and examined about the offense. The Court inquired if Smith was under the influence of alcohol or drugs, under the care of a physician or taking any medication, and whether he was able to comprehend the proceedings; inquiry was made as to whether Smith was satisfied with his counsel; the possible severity of sentence was explained, as well as Smith's constitutional and statutory rights. Upon such

inquiry in open court, the Court determined that Smith's guilty pleas to Counts Three and Four of the Superseding Indictment were voluntary and intelligent and that there was a factual basis to support the guilty pleas. (ECF No. 29).

To the extent Smith's first ground for relief does not challenge the voluntary and intelligent character of his guilty pleas, it is insufficient to support § 2255 relief and is subject to dismissal. Counsel's failure to correctly appraise the constitutional significance of certain facts, or counsel's failure to pursue a particular factual inquiry that would have uncovered some possible constitutional infirmity in the proceedings, are both insufficient to support vacating a guilty plea voluntarily and intelligently entered. *Tollett*, 411 U.S. at 267. Smith's first ground for § 2255 relief has been waived and should be denied.

### 3. No Deficient Performance

Even if Smith were able to overcome the waiver resulting from his guilty pleas, his claim of ineffective assistance of counsel for failure to file a motion to suppress his statements finds no support in the record. Smith claims he was in a postictal state when he waived his *Miranda* rights and made statements to law enforcement. He does not, however, allege that he informed his counsel of this fact, and that is fatal to his claim.

A thorough examination of the record reveals nothing to indicate that Smith ever informed his counsel that he was in a postictal state at the time he waived his *Miranda* rights. At best, Smith alleges that during state court proceedings his state court attorney advised that court that Smith had suffered a seizure, that it was determined he was not competent to proceed at that time, and his bond proceedings were postponed until he was coherent. (ECF No. 49, p. 4). Smith fails to allege that he subsequently informed his retained counsel in the instant case of this circumstance, and his own

-14-

pleadings undermine his claim.

On December 16, 2015, Smith's counsel filed a Motion for Reconsideration (ECF No. 21) concerning the Court's orders in September 2016 to detain Smith pending trial.[4]  The reason given in Smith's motion was his medical condition, Smith stating he "has been battling epilepsy since he was a teenager," "[t]hat one of Defendant's main symptoms is that he has routine seizures," "[t]hat *since Defendant has been in custody since September* he has had numerous seizures" (emphasis added), and that "Defendant is not receiving his prescribed medications for his disorders at the detention center."  (ECF No. 21, ¶¶ 5-7).  A hearing on the motion was held on January 5, 2016.  Defendant's father, Mike Smith, testified at the hearing.  He related  Smith's numerous medical problems, including epilepsy; that Smith was only receiving one of his three medications while in detention; and, how Smith's medical condition had changed since being incarcerated. (ECF No. 23).  The Court inquired about how often Smith suffered seizures before being detained, and Smith's father stated that when Smith was taking his medications he had only suffered epileptic seizures "twice, real minor."[5]  Tony Overstreet, USMS, testified he became aware of the issue on December 28, 2015, and he looked into the matter.  Overstreet testified that the nurse at the detention center advised him there was a two day lapse in Smith's medication due to a supplier; but, according to the nurse, Smith was receiving the medication and there had not been any further problems reported.  The last report of a medical complaint submitted by Smith was on December 10, 2015, and the

---

[4] Smith was initially ordered to be detained on September 22, 2015.  (ECF No. 8).  Following a detention hearing held on September 24, 2015, the Court again ordered Smith to be detained.  (ECF No. 11).

[5] Recording of hearing on motion to reconsider held on January 5, 2016, at the 09:56:10 mark.

medical issues had been resolved with Smith receiving medication as needed.  (*Id.*).  The focus of the testimony presented during the detention hearing was the change in Smith's medical condition during the three months of his detention since September 2015.  Noticeably lacking was any testimony that Smith had suffered a seizure only moments before his arrest.

On January 27, 2017, three months after his sentencing, Smith filed a Motion to Modify, Correct or Reduce Sentence.  (ECF No. 41).  In it, Smith alleged "[s]ince [his] incarceration, more has been learned about ... the severity of his seizure disorder," and "[a]t the time of sentencing, [his] medical condition was not fully known and therefore, was not fully imparted to the Court."  (ECF No. 41, ¶ 5).  Smith admitted in the motion that he "attempted to keep a great deal of his pain and discomfort from his family and loved ones but had episodes of seizure disorders."  (ECF No. 41, ¶ 8).  Smith further alleged "it has been reported that he had just awoken from a seizure at the time the police raided his home making him in an extremely confused state of mind and perhaps leading to law enforcement believing he was agitated."[6]  (ECF No. 41, ¶ 9).  Critical to the issue now before the Court, Smith also alleged that "[t]he full extent of the Defendant's epilepsy and what that may have meant in regard to his conduct at the time of his arrest and prior to his arrest could not be fully developed *because the Defendant, himself, attempted to keep his full condition from his family and friends*."  (*Id.*).

These pleadings reflect concern about Smith's epileptic seizures during his detention, the change in his condition while incarcerated, and what he subsequently learned about his condition during the course of his incarceration, but they do not indicate that Smith informed his counsel about

---

[6] Smith refers to a declaration from Jessica Teague (who was present at the time of his arrest) being attached to the motion as Exhibit B, but no such declaration was attached to the motion.  (ECF No. 41, ¶ 9).

suffering an epileptic seizure shortly before his arrest and being in a postictal state at the time of his *Miranda* waiver and interrogation by law enforcement. To the contrary, these pleadings demonstrate a conscious effort by Smith to conceal his epileptic seizures from others. Smith's counsel cannot be faulted for failing to raise an issue that was unknown to him because Smith had not informed him of it. *See Beeman v. Iowa*, 108 F.3d 181, 184 (8th Cir. 1997) (counsel not ineffective where lateness of motion to suppress was caused by defendant's failure to inform counsel of facts that supported motion); *Lopez-Angel v. United States*, 2011 WL 2489960, *6 (N.D. Iowa 2011) (Unpublished) (defense counsel is not ineffective for failing to file a motion to suppress where defendant did not inform counsel of the possible grounds for filing such a motion) (citing *Bell v. Attorney General of State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007)).

The Government notes that Smith is making an argument similar to that presented in *United States v. Vinton*, 631 F.3d 476 (8th Cir. 2011), where the defendant argued he had a history of drug abuse and a "borderline I.Q." that rendered his statements to the police involuntary. The Court there held that although lack of education and lower-than-average intelligence are factors in the voluntariness analysis, they do not dictate a finding of involuntariness, particularly when the defendant is clearly intelligent enough to understand his constitutional rights. 631 F.3d at 482. Here, there is no showing by Smith that his seizure disorder rendered him incapable of understanding his *Miranda* rights. The Court in *Vinton* also held "[a] statement is not considered involuntary unless 'the police extorted it from the accused by means of coercive activity.'" *Id*. Smith fails to demonstrate, or even allege, that he was coerced into making his statements to law enforcement. Smith has not shown that his decision to speak with law enforcement was the product of anything other than his free and unconstrained choice, and his counsel's decision not to file a motion to

-17-

suppress does not constitute ineffective assistance. *See Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990) (it cannot be ineffective assistance not to raise a meritless argument).

### 4. No Showing of Prejudice

Since Smith has failed to show that counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *Walker*, 324 F.3d at 1040. Even so, upon considering Smith's allegations and the record there is no showing of prejudice.

Smith alleges he suffered prejudice "from the incoherent statements which were made in relation to the drug quantities" which "had a prejudicial effect on the outcome of his proceedings and resulted in a higher sentence than necessary." (ECF No. 49, pp. 5-6). This apparently refers to Smith's statements that for approximately six months he sold an average of two pounds of methamphetamine a week to more than 40 customers. (ECF No. 34, ¶ 25). Smith objected to this paragraph of the PSR, stating that it was untrue and "[h]e did not make this statement." (ECF No. 34-1, p. 1). The Probation Officer responded that Smith had stipulated to making such a statement in the factual basis section of his written plea agreement. (*Id.*). At sentencing, the Court found Smith should be accountable for only two pounds of a mixture of methamphetamine and not 21.77 kilograms. (ECF No. 39, ¶ I(B)(1)). Moreover, the Court granted Smith's motion for a downward departure or variance, thereby imposing a sentence 27 months below the low end of the advisory Guidelines range for Count Three. (ECF No. 39, pp. 1-3). As a result, it simply cannot be said that Smith's statements to law enforcement regarding drug quantity had a prejudicial effect on the outcome of the proceedings leading to a higher sentence than necessary.

Accordingly, Smith has failed to show either deficient performance or prejudicial effect of counsel's failure to seek suppression of Smith's statements to law enforcement, and his first ground

for § 2255 relief should be denied.

### D. Failure to Object to Counting the Sentences Separately (Ground Two)

Smith next claims ineffective assistance of counsel for failing to object to the Court's finding that it must consider the sentence imposed on each count of conviction separately. (ECF No. 49, pp. 6-9). Relying on *Dean v. United States*, 137 S.Ct. 1170 (2017), Smith asserts "[w]hile the Petitioner was subjected to a mandatory minimum on his violation of § 924(c), there would be no reason that the court could not apply the sentence being imposed for that crime to the one being considered in the § 841 violation," and "counsel's failure to ... object to the rationale being applied in his sentencing allowed the Petitioner's resulting sentence to be prejudice (sic) by that defect in their representation." (ECF No. 49, p. 8). Smith's argument fails for the reason that *Dean* was decided just over five months after his sentencing on October 27, 2016, and defense counsel cannot be held accountable for failing to anticipate future changes in the law.

In a decision issued on April 3, 2017, the United States Supreme Court held there is no reason why the 18 U.S.C. § 3553(a) sentencing factors may not also be considered "at the front end" when determining a prison sentence for each individual offense in a multicount case. *Dean*, 137 S.Ct. at 1176. In other words, "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Id.* at 1176-77. The Supreme Court commented that "[w]hether the sentence for the predicate offense is one day or one decade, a district court does not violate the terms of § 924(c) so long as it imposes the mandatory minimum 'in addition to' the sentence for the [predicate offense]." *Id.* at 1177.

Had *Dean* been the law at the time of Smith's sentencing, his counsel could have reasonably

argued that the Court should consider Smith's mandatory minimum sentence of five years as a first-time offender of § 924(c) on the front end of fashioning a fair and just sentence, and that a very minimal sentence, i.e., one day, should be imposed on the predicate offense since § 924(c) also required both sentences to run consecutively. The Supreme Court had not, however, decided *Dean* at the time of Smith's sentencing, nor was *Dean* even pending on a grant of certiorari to the Supreme Court at that point.[7] Eighth Circuit precedent existing at that time, including the Eighth Circuit's decision in *Dean v. United States*, 810 F.3d 521 (2015) (citing *United States v. Hatcher*, 501 F.3d 931, 933-34 (8th Cir. 2007)), would not have supported such an argument.

The Eighth Circuit has frequently held that defense counsel cannot be found to be ineffective for failing to anticipate a change in the law. *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) ("counsel is not accountable for unknown future changes in the law"); *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999) (failure of counsel to anticipate a change in the law does not constitute ineffective assistance). Counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts, and failure to raise a "novel argument" based on unsettled legal questions does not render counsel's performance constitutionally ineffective. *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014); *Allen v. United States*, 829 F.3d 965, 967 (8th Cir. 2016); *Basham v. United States*, 811 F.3d 1026, 1029 (8th Cir. 2016); and, *Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014).

Smith seeks to fault his counsel for failing to anticipate the Supreme Court's decision in *Dean*. As noted above, Eighth Circuit precedent existing at the time of Smith's sentencing would

---

[7] The Supreme Court did not grant certiorari until October 28, 2016, the day *after* Smith's sentencing. *Dean v. United States*, 137 S.Ct. 368 (Oct. 28, 2016).

have precluded the argument Smith claims his counsel should have advanced. Ineffective assistance cannot be based on the failure to raise a meritless argument. *Larson*, 905 F.2d at 219. Thus, Smith fails to demonstrate deficient performance by his counsel on this issue.

Smith is also unable to show prejudice. Smith's counsel filed a Sentencing Memorandum and Motion for Non-Guideline Sentence on September 23, 2016 prior to Smith's sentencing. (ECF No. 36). Counsel noted that "[t]he ultimate task facing this Court is to fashion a reasonable Sentence based on the United States Sentencing Guidelines, the Section 3553(a) factors, and the application of the Court's considerable discretion." (ECF No. 36, p. 2). Counsel cited numerous Supreme Court decisions which significantly broadened the range of sentencing choices available to a sentencing court. (ECF No. 36, pp. 3-4). Counsel argued that Smith should receive the benefit of the "Safety Valve" provided for in U.S.S.G. §5C1.2(a). (ECF No. 36, pp. 4-5). Counsel argued the § 3553(a) factors and their purpose in seeking to mitigate Smith's potential sentence. (ECF No. 36, pp. 5-9). Counsel argued that the advisory Guidelines allow a court to impose a non-Guidelines sentence when such a sentence satisfies the goals set forth in § 3553(a); policy statements of the United States Sentencing Commission were referenced, as well as sentencing data for similarly situated offenders; and, counsel argued that a sentence of 37 months imprisonment, or alternatively, the mandatory sentence under § 924(c)(1)(A), would be sufficient, but not greater than necessary, to achieve the goals of sentencing. (ECF No. 36, pp. 9-13).

At sentencing, the Court substantially reduced the drug quantity attributed to Smith in the PSR, and the advisory Guidelines range for Count Three was reduced to 87 to 108 months imprisonment. (ECF No. 39, p. 1). Defense counsel's motion for a downward departure or variance, which the Government did not oppose, was granted, and the Court imposed a below-Guidelines

sentence of 60 months imprisonment on Count Three.  (ECF No's. 38; 39, ¶ VI).  The Court also imposed the mandatory minimum sentence of 60 months imprisonment on Count Four which, pursuant to § 924(c)(1)(A), was ordered to run consecutively to the sentence imposed on Count Three.  While the sentence imposed by the Court is not exactly what Smith's counsel had argued for, Smith did receive what he asked for – a substantially lower sentence.  Under such circumstances, and considering the law existing at the time of Smith's sentencing, Smith has failed to demonstrate prejudice from any alleged failure of counsel to argue for a lower sentence.

Having failed to demonstrate either deficient performance or resulting prejudice, Smith's second ground for § 2255 relief should be denied.

### E.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).  Such are the circumstances in this case where Smith's claims for § 2255 relief have either been waived by his guilty pleas, lack support in the record, or are otherwise clearly without merit.  The summary dismissal of Smith's § 2255 Petition without an evidentiary hearing is appropriate.

### F.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner

-22-

did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000). For the reasons discussed above, Smith has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, it is recommended that Smith's Motion Seeking a Vacatur, Setting-Aside, Correction of His Sentence (Pursuant to Title 28 U.S.C. § 2255) (ECF No. 49) be **DISMISSED with PREJUDICE**.  It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of December 2017.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE